This is United States v. Tate, Appeal No. 23-1399. Ms. Phelps, whenever you're ready. Thank you, Your Honor. May it please the Court, my name is Jacqueline Phelps for Defendant Appellant Carmen Tate. With the Court's permission, I'd like to reserve two minutes. It is indisputable that Carmen Tate was entitled to a review of seven sentencing factors. What he actually received was a review of less than half of that. The government cannot and does not point to any instance in the record where there was meaningful discussion as to why something other than a live sentence fails to afford adequate deterrence to criminal conduct. The government cannot and does not point to any instance where there was a meaningful discussion of why something other than a live sentence fails to protect the public from further crimes by Mr. Tate. The government cannot and does not point to any instance in the record where there was meaningful discussion as to why the 30 years Mr. Tate has already served has not provided him adequate educational and vocational training. The government cannot and does not dispute that the District Court did not address why something other than a live sentence would be inconsistent with the Sentencing Commission's policy statements. These are congressionally mandated factors that this Court has specifically stated a District Court must not only consider, but it must adequately explain its sentence with reference to these factors. This Court's precedent and Supreme Court precedent all but resolve this appeal. In Concepcion v. United States, the Supreme Court said that when deciding a First Step Act motion, District Courts bear what the Supreme Court called standard obligations that they have at any other sentencing proceeding. Before you get any further, Ms. Hill, I take it you agree that we are just talking about the second step in these First Step Act things. The District Court was very clear that he found Mr. Tate eligible for reduction. He's just explaining why he's not exercising his discretion to grant one. Yes, Your Honor. It appears that the government does not dispute that Mr. Tate was eligible. The District Court's motion was a little bit back and forth, but as far as— But when all is said and done, you read his opinion. He even divides it up into separate sections. He agreed. And so you're making the difficult argument that it was an abuse of discretion not to lower a sentence. And the judge does. It may be not an essay, but the judge says, I think a life sentence is still warranted because of this managing role in the violent street gang that Mr. Tate had played, the drug sales, how long it had gone on. The judge, as I read it, seemed to think that he just didn't see anything wrong. Now, he does make this remark, too. It's in some ways a windfall for you because as it happens, you were dealing with both cocaine and heroin, and if it had just been the heroin, we wouldn't even be here. I'm not sure what that—I don't know if that adds or subtracts. But in any event, he does say this was a very serious crime, and I think you have the right sentence right now. Yes, Your Honor, and no one is disputing that this was a very serious crime, certainly not Mr. Tate. However, the nature and circumstances of the offense is certainly a 3553 factor, but it's not the only 3553 factor. And what the Supreme Court said in Pepper v. United States was that a court cannot elevate one sentencing factor to the exclusion of the others. And beyond that, again, we have no— I'm really driven by this history and characteristics factor, not a deterrence factor, because that's what the record in front of me leads to. It's not like you're ruling out the other factors, but there's no compulsion to treat them all at a 20% level or something. Exactly, Your Honor, and we're certainly not asking for any sort of mathematical formula, but what we know is that less than half is not enough. When there are seven factors and we got review on less than half of them, that's not enough. There was no discussion as to why—considering the kinds of sentences available, there was no discussion as to why something other than a live sentence provides Mr. Tate— or protects the public from adequate deterrence to criminal conduct. The district court consistently mentioned the nature and circumstances of the offense, but that also—that very same situation occurred in this court's decision in United States v. Korner. So that gives us a little more insight as to why remand is necessary. So in Korner, the question wasn't, is this defendant eligible? The question was, what are the consequences of a defendant's eligibility? And this court held that the district court's exercise of discretion in Korner was unreasonable because not only did it not address the defendant's argument that he deserved a reduction in his sentence given the policies and the goals of the First Step Act, but also the court said that by citing only the reasons that were given at the time the original judge originally selected them, the resulting sentence—and I'm quoting here—was based on parameters that no longer apply, end quote. And that's the same thing that happened in Mr. Tate's case. The primary and almost only reason the district court gave for denying Mr. Tate's motion were statements made by the original sentencing judge and the facts of the original case. Those statements were made under a radically different sentencing landscape, and— But you're not arguing that the judge was disabled from looking at the earlier judge's calculation of the drugs at issue, even though—at least as a 3553A factor—even though that's not the way it would be done now. We all understand that these changes have happened. But the judge does look at that 149 kilos of heroin. That's enough to earn you a life sentence today. Yes, Your Honor, and I think that's where we get to the difference between the mandatory life sentence Mr. Tate received and the discretionary life sentence that he would receive under today's policies. And that gets back to 3553.7, which is any applicable policy statements made by the Sentencing Commission. We know, for example, from Sentencing Commission data, that a life sentence in the federal system is extremely rare. And I think the most recent statistic from the 2022 report was that a life sentence is imposed in less than 0.2 percent of federal cases. So that certainly would be relevant to whether a discretionary life sentence would still be appropriate. And then we also have the 30 years that have elapsed from the original time of this very serious crime to now. And there's nothing in Mr. Tate's carceral record that indicates, for example, that he poses a danger to the public. Again, we know from the Sentencing Commission's data that recidivism decreases with age. That data, whether it was taken into consideration or not, is not in our record. We also know from Mr. Tate's carceral record that he has done extremely well. But counsel, didn't the judge took all that in consideration, right? I mean, if you look at—I'm looking at the order, page 21, where it says the court acknowledges, you know, the struggles that Mr. Tate suffered as a child and teenager, letters of family support, and his good conduct while incarcerated. So the judge did weigh all of those factors and considered them, at least, and then concludes, but the record fails to warrant any reduction in his sentence. Why isn't that enough, given what the record—the record that was before the judge? Yes, Your Honor, and so the difference here is there's a big difference between taking a defendant's argument and sort of regurgitating it back and adding a couple of key buzzwords. Weighed this, considered this. That runs—that still doesn't give any meaningful discussion as to why those things outweigh the nature and circumstances of the offense. And what's going to happen here is this is going to run the risk of becoming boilerplate, where a judge cuts, pastes, this is what the defendant argued, I considered that. Well, then I guess I would echo what Judge Kirsch asked in the prior cases. What more do you think he could have done? Well, again, there's no—I'm sorry, there's no mathematical formula, but less than half of these factors is not enough. And in this case— So you want—you basically want a checklist where the judge just goes down and says, here's what I think about this. You know, you could do that. We've never said you had to, but it's— And that's exactly right, Your Honor. This Court has never said, and I think has actually said the opposite. Right. That's correct. But, again, the difference is allowing for meaningful appellate review and also meaning for the defendant. And I think we can get back to even Chavez Mesa v. United States where the Supreme Court said, it's not the length of what you say, it's the substance of what you say. And so a 31-page opinion in this case is long, but we have to look at what the substance of that opinion is. So if there are no further questions, I would like to reserve the remainder of my time. Okay, Ms. Bonamici. May it please the Court. Deborah Bonamici on behalf of the United States. Your Honors, the District Court in this case carefully tracked the procedural and substantive directives of this Court and the Supreme Court in conducting its analysis. It considered the parties' arguments and the relevant 3553A factors, and it explained its decision in a thorough 22-page memorandum opinion. The Court did not abuse its discretion in this case in determining that the defendant was eligible for relief under Section 404 of the First Step Act, but that a sentence reduction was not warranted. The Court, contrary to the defendant's suggestion, the Court did, as Judge Lee points out, carefully consider, specifically and expressly consider the arguments raised by the defendant specifically, the arguments that the defendant made to suggest that the calculus had really changed with respect to the defendant and what was needed or what was appropriate at this time. And those arguments included, as the District Court outlined, arguments about his prior, his youth, and arguments, most importantly, about what he had done in rehabilitative efforts with respect to during his time in prison. The Court expressly mentioned those in detail over several pages of his opinion and just simply determined that other factors were more salient here, particularly the seriousness and the nature and seriousness of the defendant's crime, which, as your Honors know, included six years of directly managing and supervising a violent street gang that sold drugs on the West Side. I mean, it was a significant crime, and it involved, as the Court found at the original sentencing, approximately 149 kilos of heroin and 25 kilos of crack cocaine. It is possible, of course, for courts to disagree or to come to different conclusions about the relative weight that these factors should receive, but the District Court was entitled to exercise its own judgment and make that determination, and nothing that the defendant has presented alters that equation at all. So is there any problem with the way the Court tied together these remarks saying, gee, you know, if the cocaine had never been charged, you wouldn't even be here anyway? No. I think that what that actually says, it's a comment on two things. One, about the Court's observations about the nature and purposes of the motion or the statute that it was— The First Step Back, you mean, yeah. First Step Back, generally, but Section 404 in particular, which was specifically designed to give people the opportunity to take advantage of changes that were made by the Fair Sentencing Act. In the defendant's case, partly because of the quantity of heroin that's a non-covered offense, has nothing to do with the Fair Sentencing Act, but also partly because of the scope of the defendant's involvement in crack cocaine, the Fair Sentencing Act had no impact on either his statutory sentence or his guidelines parameters. So I think that's a comment with respect to that, which is fair comment on policy, but it also takes into account the need to avoid unwarranted disparities, because what the Court specifically noted, that a defendant who committed the very same or similar crimes today would be subject to the exact same sentencing parameters, and that's an important consideration. It's the beginning and the end. According to the Supreme Court, the District Court was required to calculate the guidelines as if the Fair Sentencing Act was in effect at the time of the offense. The Court did that, and then used that guidelines range as the benchmark against which to consider the party's arguments and exercise its discretion. That's precisely what the Court did in this case. With respect to the nature and circumstance, the number of the seven factors and the one factor, in reality, the factors that are set forth in Section 3553A are more nuanced than that, and the nature and seriousness of the offense is applicable and relevant to a number of the specific factors that are laid out in other subparagraphs of that section, and the defendant's argument does not take that into account. The Court did meaningfully discuss the defendant's arguments here. It simply came to a conclusion that they did not overcome the other factors that flowed from the nature and circumstances of the defendant's case, and that was a discretionary call that was well within the Court's discretion. If there are no other questions, the government would ask that you affirm. Okay. Thank you, Ms. Bonamici. Ms. Phelps, we'll give you a minute for rebuttal. Your Honors, it's important to remember here that this is a pre-apprendi case, and so this 149 kilos that we keep talking about is, in fact, a judge-made finding, and that would not subject him to a live sentence if he were standing before the Court today because that was never submitted to a jury for proof beyond a reasonable doubt. The other thing is that this discussion about unwarranted sentencing disparities, and Judge Wood, you alluded to this earlier as well. This Court has already said, and this is United States v. Johnson, that the unwarranted sentencing disparity consideration is not a consideration between a defendant versus another defendant's legal inability to benefit from a change in a law. What this Court said in United States v. Johnson was that that logic is, and I'm quoting, is misguided, and what the Court said is, it is the duty of the Court to impose a sense in conformity of the laws that stood on the day of sentencing and that district courts are to analyze disparities between defendants based on the similarity of the offense and the offenders, not in light of the legal inability of other defendants to take advantage of a change in law. And at the bottom line, while the Court has broad discretion under the First Step Act, that discretion is not unfettered. The parsimony principle of 3553 exists to ensure that a sentence is sufficient but not greater than necessary, and to quote from Concepcion, when a defendant appears at sentencing, he stands before the Court on that day, not on the date of his original sentencing or on his original conviction. That means that deciding if a sentence is sufficient but not greater than necessary requires examining the totality of the circumstances as they currently exist, not as they existed in this case nearly 30 years ago, and again to quote Korner, based on parameters that no longer apply. Thank you, Ms. Phelps. Thank you to both counsel. The case will be taken under advisement.